UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ALFRED ARMANDO ACROND, | § § | |
| Petitioner, | § | |
| VS. | § § | CIVIL ACTION NO. G-10-532 |
| RICK THALER, | § § | |
| Respondent. | § § | |

## **MEMORANDUM AND ORDER OF DISMISSAL**

The petitioner, Alfred Armando Acrond (#1108510), seeks habeas corpus relief under 28 U.S.C. § 2254, challenging the revocation of his parole. The respondent has filed a motion for summary judgment. (Doc. # 8). Acrond has filed a response (Doc. No. 10). Based on a careful consideration of the pleadings, the record and the applicable law, this court grants the respondent's motion and by separate order enters final judgment dismissing the case. The reasons for this ruling are set out below.

**I.     PROCEDURAL HISTORY**

Acrond was charged by indictment with possession of a controlled substance, codeine, in the 344th District Court of Chambers County, Texas. He pleaded guilty and was sentenced to eight years of deferred adjudication on February 4, 1997. On January 6, 2000, the State moved to adjudicate his guilt. On September 7, 2000, Acrond was adjudicated guilty and sentenced to fifteen years incarceration in TDCJ-CID by the trial court. (A procedural history of any appeals or state writ applications pertaining to Acrond's conviction is not necessary for disposition of this case because he has not properly challenged the validity of his holding conviction.). On March 17, 2005, Acrond was released to parole. His parole was revoked on December 8, 2009,

1

after violating the terms of his supervision on two separate occasions. The instant federal petition challenges the revocation of his release to parole.

On April, 15, 2010, Acrond filed a state habeas application challenging, in part, the revocation of his parole. The Texas Court of Criminal Appeals ("TCCA") dismissed the application as procedurally non-compliant on June 30, 2010. On August 19, 2010, Acrond filed a second state habeas application challenging the revocation of his parole. The TCCA denied the application without written order on October 27, 2010. The instant federal petition for writ of habeas corpus was filed on November 2, 2010. Acrond argues that he is entitled to relief for the following reasons:

1. His right to be free from double jeopardy was violated when the Board of Pardons and Paroles (Board) first found insufficient evidence to revoke his parole, then revoked his parole after an additional revocation hearing.

2. He was denied due process when he was not given a proper revocation hearing in the county jail.

3. He was deprived of liberty and due course of law when he was returned to his sentence and TDCJ before his parole was revoked.

4. He was denied the right to representation during the revocation hearing.

5. The Board failed to revoke his parole within the statutory time-frame.

Doc. No. 1, pp. 7-8.

## II. STANDARD OF REVIEW

This court reviews Acrond's petition for writ of habeas corpus under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996. 28 U.S.C. § 2254; *Woods v. Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson,* 127 F.3d 409, 413 (5th Cir. 1997) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). Subsections 2254(d)(1) and

(2) of the AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits." An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

In ruling on a motion for summary judgment, this court views the evidence through "the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986). The court must look "through the prism of AEDPA deference." *Ward v. Dretke*, 420 F.3d 479, 499 (5th Cir. 2005).

The AEDPA provides as follows, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e) (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the

3

Supreme Court of the United States." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state-court decision is "contrary to" Supreme Court precedent if (1) the state court's conclusion is "opposite to that reached by the [the Supreme Court] on a question of law" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362 (2000). A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 390-91. In deciding whether a state court's application was unreasonable, this court considers whether the application was "objectively unreasonable." *Id.*; *Penry v. Johnson*, 215 F.3d 504, 509 (5th Cir. 2000). Fact findings by the state court are "presumed to be correct . . . and [receive] deference . . . unless . . . based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Hill*, 210 F.3d at 485 (quoting U.S.C. § 2254(d)(2)).

Pure questions of fact are governed by § 2254(d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). In addition, a state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1) unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules.  Section 2254(e)(1) - which mandates that findings of fact made by a state court are "presumed to be correct" - overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.  Unless the petitioner can "rebut [ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).  Moreover, once a party has been given a reasonable time to respond to an opposing party's motion for summary judgment but fails to make any attempt to do so, the Court may rule upon the evidence before it and may treat that evidence as undisputed.  *Eversley v. MBank Dallas*, 843 F.2d 172, 173-74 (5th Cir. 1988).

Acrond is a *pro se* petitioner.  In this circuit, *pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers.  *See Martin v. Maxey*, 98 F.3d 844, 847 n. 4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988).  This court accords state and federal habeas petitions a broad interpretation.  *Bledsoe v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).

### III.  DISCUSSION

#### A.  The Claim of Double Jeopardy

Acrond complains that the revocation of his parole violates the Double Jeopardy Clause. He alleges that on October 15, 2008, while on mandatory supervision, the Board allowed him to remain on supervised release despite another arrest for possession of a controlled substance.  On

December 9, 2009, the Board decided to revoke his parole, in violation of his right to be free from Double Jeopardy.

The Fifth Amendment's Double Jeopardy Clause protects against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). A sentence imposed after the revocation of supervised release or probation is not "punishment," but rather part of the penalty for the original conviction. *Johnson v. United States*, 529 U.S. 694, 700 (2000); *United States v. DiFrancesco*, 449 U.S. 117, 137 (1980). Consequently, "there is no double jeopardy protection against revocation of probation and the imposition of imprisonment." *Id*. Acrond's claim based on a violation of the Double Jeopardy Clause fails as a matter of law.

The Court would note that Acrond has not been completely forthcoming in his claim. The record shows that the evidence available to the Board changed between Acrond's first and second revocation hearing. Acrond had not yet been convicted of possession of a controlled substance at the time of his first hearing in October 2008. He pled guilty to the offense on September 2, 2009; when the Board reconsidered his revocation in December 2009, they revoked his parole based on the additional evidence. *See* Doc. No. 1, Exh. D.

### B.  The Claim of Denial of Due Process

Acrond also alleges that he was denied due process because he was transferred to TDCJ from the county jail before his revocation hearing was held and because the Board waited too long before revoking his parole.

The loss of liberty that is concomitant with parole revocation requires that parolees be accorded due process during revocation proceedings. *Morrissey v. Brewer*, 408 U.S. 471 (1972). The Supreme Court outlined the minimal constitutional requirements for the two critical stages in the parole revocation process. First, in the preliminary hearing, when the State determines

"whether there is probable cause or reasonable grounds to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions," there are at least three procedural protections required: (1) The parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged. (2) At the hearing, the parolee may appear and speak on his own behalf; he may bring letters, documents or individuals who can give relevant information to the hearing officer. (3) On request of the parolee, persons who have given adverse information on which parole revocation is to be based are to be made available for questioning in his presence. However, if the hearing officer determines that the informant would be subjected to risk of harm if his identity was disclosed, he need not be subjected to confrontation and cross-examination. *Id.* at 486-87.

Second, if the State determines that there is probable cause for believing the parolee violated the terms of his parole, the State must afford the parolee the option of a final revocation hearing. This hearing goes beyond a determination of probable cause "to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Id.* at 483. The Supreme Court outlined six essential protections for this stage required by the Due Process Clause: (1) written notice of the claimed violations of parole; (2) disclosure to the parolee of evidence against him; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (5) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (6) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole. *Id*. at 489. The

7

Supreme Court observed that "[g]iven the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole." *Id*. at 483. The Court stressed that the final revocation hearing should be a "narrow inquiry," yet flexible enough for the parole board to "consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* The goal is to ensure that "the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* at 484.

Applying these requirements to this case shows that, as a matter of law, there was no due process violation. Acrond's parole records show that he was provided with written notice of the alleged violations of his parole prior to the revocation hearing, specifically, that he had allegedly violated Rule 2, which prohibits new state or federal criminal offenses. (Parole Packet, p. 18). Acrond attended his revocation hearing, was presented with the evidence against him, and was allowed the opportunity to call witnesses and present evidence. *Id*. at 11, 13 and 16. Acrond received a written statement of the fact finders but refused to sign it. *Id*. The record shows that Acrond received all the due process considerations that are guaranteed by the "Due Process Clause." As correctly noted by the respondent, Acrond has not shown that an alleged failure of the Board to meet statutory deadlines in his revocation hearing denied him due process. *Morrissey*, 408 U.S. at 489. Acrond's parole was revoked after he pled guilty to possession of a controlled substance. Even assuming, *arguendo*, that the Board failed to meet a statutory deadline, Acrond has not shown that such failure had a substantial and injurious effect on the outcome of the hearing. This claim is without merit.

### C. The Claim of Denial of Counsel

Finally, Acrond alleges that his constitutional rights were violated when he was denied counsel at his parole revocation hearing. A parolee is generally not entitled to counsel at a revocation hearing unless he makes a colorable claim that: (1) he did not commit the alleged violation; (2) there are substantial mitigating circumstances; or (3) he appears unable to speak for himself effectively. *Gagnon v. Scarpelli*, 411 U.S. 778, 790-91 (1973). Acrond has not demonstrated that any circumstances existed that gave him a constitutional right to counsel. He was advised that he had the right to counsel under certain circumstances to be determined by a hearing officer, and that if he did not qualify for the right, he could hire an attorney to represent him. At the revocation hearing, he was denied a state appointed attorney because the allegations involved were non-complex issues; he was able to articulate and speak for himself; and he told the revocation hearing officer that he understood his rights in the hearing process. While federal regulations allow paroleess to representation by appointed or retained counsel, Acrond did not retain counsel. The denial of relief on this claim by the Texas Court of Criminal Appeals must be affirmed.

## IV. CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals ... ' "*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

Under the AEDPA, a petitioner must obtain a certificate of appealability before he can appeal the district court's decision. 28 U.S.C. § 2253(c)(1). This court will grant a COA only if the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make a substantial showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As the Supreme Court made clear in its decision in *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003), a COA is "a jurisdictional prerequisite," and "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from the habeas petitioners." When considering a request a COA, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 325.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After considering all of the pleadings, the state court records, and the applicable law, the Court concludes that none of the issues presented in this case warrant a certificate of appealability under the applicable standard. Therefore, a certificate of appealability will not issue.

## V.    CONCLUSION

Based on the foregoing, the Court **ORDERS** that the respondent's motion for summary judgment is **GRANTED,** the petition for writ of habeas corpus is **DENIED,** and a certificate of appealability is **DENIED.**   All pending motions are **DENIED.**

SIGNED at Houston, Texas this 26th day of January, 2012.

Kenneth M. Hoyt
United States District Judge